Todd K. Boyer, State Bar No. 203132
tboyer@boyerwenter.com
Billie D. Wenter, State Bar No. 235193
bwenter@boyerwenter.com
BOYER WENTER LLP
1585 North 4th Street, Suite N
San Jose, CA 95112
Telephone: +1 669-296-0323

Attorneys for Plaintiff
THOMAS WOOTON

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS WOOTON, an individual, | Case No.:  3:22-cv-5456 |
| Plaintiff, | **COMPLAINT FOR DAMAGES** |
| v. | **1. VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT** |
| REVOLUTION FOODS, PBC, a Delaware corporation; REVOLUTION FOODS, INC., a Delaware corporation; DOMINIC ENGELS, an individual; KRISTIN GROOS RICHMOND, an individual; and KRISTIN GUNTHER, an individual, and DOES 1–20, inclusive, | **2. VIOLATION OF THE CALIFORNIA FAMILY RIGHTS ACT** |
| Defendants. | **3. FAILURE TO PREVENT DISCRIMINATION AND RETALIATION** |
| | **4. WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY** |
| | **5. BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING** |
| | **6. FRAUDULENT INDUCEMENT** |
| | **7. NEGLEGENT MISREPRESENTATION** |
| | **8. CONVERSION** |
| | **9. FAILURE TO TIMELY PAY ALL WAGES AT TERMINATION** |

Boyer Wenter LLP
1585 N. 4th St, Suite N
San Jose, CA 95112

**10. FAILURE TO PAY ALL VESTED VACATION TIME**

**11. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

**12. VIOLATION OF CALIFORNIA CORPORATIONS CODE § 25401**

**13. RETALIATION FOR REPORTING SECURITIES FRAUD**

**14. UNLAWFUL, UNFAIR, AND FRAUDULENT BUSINESS PRACTICES**

**JURY TRIAL DEMANDED**

Plaintiff, Thomas Wooton ("Wooton" or "Plaintiff"), brings this action against Defendants, Revolution Foods, PBC, Revolution Foods, Inc., Dominic Engels ("Engels"), Kristin Groos Richmond ("Richmond"), Kristin Gunther ("Gunther"), and Does 1–20, inclusive, as referred to herein, for compensatory damages, punitive damages, injunctive and declaratory relief, interest, costs, and attorneys' fees resulting from the Defendants unlawful and tortious conduct, as set forth below.

## PARTIES

1.      Wooton is and/or was at all relevant times an individual domiciled and residing in Park City, Utah.  Revolution Foods employed Wooton as its Chief Financial Officer ("CFO") in Alameda County, California, and remotely in Park City, Utah.

2.      Defendant Revolution Foods, Inc. was a company organized and existing under the laws of the State of Delaware, with its principal place of business in Alameda County, California.  At all relevant times, Revolution Foods, Inc. was an "employer" as defined by Gov. Code §§ 12926(d), 12940(j)(4)(A), 12945.2(b)(3)(A), and 29 U.S.C. § 2611(4)(a)(ii), and employed more than 50 employees.  On or around August 20, 2021, Revolution Foods, Inc. merged into and became Defendant Revolution Foods, PBC.

3.      Defendant Revolution Foods, PBC is and/or was at all relevant times a company organized and existing pursuant to the laws of the State of Delaware with its principal place of business in Oakland, California.  Revolution Foods, PBC is an "employer" as defined by Gov. Code §§ 12926(d), 12940(j)(4)(A), 12945.2(b)(3)(A), and 29 U.S.C. § 2611(4)(a)(ii), and at all relevant times employed more than 50 employees.  Revolution Foods, Inc. is now Revolution Foods, PBC, operating under the name "Revolution Foods."  Hereafter, Revolution Foods, PBC and Revolution Foods, Inc. are referred to collectively as "**Revolution Foods**."

4.      Defendant Engels is and/or was at relevant times herein an individual employed as Revolution Foods' Chief Executive Officer ("CEO") working in Alameda County, California, at Revolution Foods' headquarters; is an "employee" under 29 U.S.C. § 2611(4)(a)(ii); and, on information and belief, is domiciled and residing in Mill Valley, California.

5.      Defendant Richmond is and/or was at relevant times herein an individual employed as Revolution Foods' CEO until Defendant Engels became CEO and Richmond became Chair of the

Board of Directors.  At all relevant times, Richmond worked in Alameda County, California, at Revolution Foods' headquarters, and, on information and belief, is domiciled and residing in Mill Valley, California.

6.     Defendant Gunther is and/or was at all relevant times a member of Revolution Foods' Board of Directors and is a Partner at Revolution Growth, which has an office in San Francisco, California.

7.     Wooton is not aware of the true names and capacities of Defendants sued herein as Does 1 through 20, whether individual, corporate, associate, agent, or otherwise, and, therefore, sues such defendants by these fictitious names.  Wooton will amend this complaint to allege their true names and capacities when ascertained.  Wooton is informed and believes, and on that basis alleges, that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged and that the injuries and damages herein alleged were legally caused by such defendants.

8.     Wooton is informed and believes and thereon alleges that each of the Defendants, including the Doe defendants, acted in concert with each and every other Defendant, intended to and did participate in the events, acts, practices, and courses of conduct alleged herein and was a proximate cause of damage and injury to Wooton as alleged herein.

9.     At all times herein mentioned, each Defendant was an agent or employee of each of the other Defendants and was acting within the course and scope of such agency or employment.

## JURISDICTION AND VENUE

10.     This Court has personal jurisdiction over Defendants because they are residents of and/or doing business in the State of California.

11.     The Court has subject matter jurisdiction over Plaintiff's causes of action under 28 U.S.C. § 1332 because there is complete diversity of citizenship and the amount in controversy, exclusive of interest and costs, exceeds Seventy-Five Thousand Dollars ($75,000.00).

12.     This Court also has subject matter jurisdiction under 28 U.S.C. § 1331 because this action alleges claims under the Family and Medical Leave Act, 29 U.S.C § 2615, *et seq.*, and pendant jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

13.     Venue is proper in the Northern District of California (Oakland Division) under 28

U.S.C. § 1391(b)(1)–(2) and Civil L.R. 3-2(c)–(d) because Revolution Foods is headquartered in this District, conducts business in this District, and a substantial part of the events or omissions giving rise to this matter occurred in this District. Further, Wooton's claims against Revolution Foods relate to contracts that designate the United States District Court for the Northern District of California as the venue for any related dispute.

## FACTUAL ALLEGATIONS

### Wooton's Employment with Revolution Foods

14. Wooton began performing services as a CFO for Revolution Foods in August 2019, as an independent contractor through MERU, a consulting company Revolution Foods hired in late July 2019, to help it cut costs and define a path to sustained profitability. Wooton worked as a subcontractor for MERU. Through April 2020, Wooton continued as interim CFO and began Revolution Foods' fundraising and debt restructuring efforts to relieve Revolution Foods from its impending cash issues, including a forecasted breach of its term loan covenants.

15. On March 4, 2020, under Wooton's leadership, Revolution Foods completed $10,000,000 in Series K funding.

16. On March 30, 2020, during the global COVID-19 pandemic, Wooton became Revolution Foods' interim CFO as an employee, which was memorialized in a letter on April 9, 2020. Wooton negotiated the terms of his employment with Richmond during the pandemic; Revolution Foods' California office was closed and under restriction due to shelter-in-place orders. Wooton received an annual salary of $350,000 and was eligible for a target payout percentage of 50% of his annual earned base salary. Wooton reported to Richmond. On August 29, 2020, Revolution Foods closed Fiscal Year 2020 ahead of plan for both revenue and earnings (EBITDA). Under the terms of the April 9, 2020 agreement, Wooton was entitled to and received his full bonus.

17. On May 5, 2021, Revolution Foods offered Wooton the position of CFO as a full-time regular employee, and Wooton accepted the offer on May 6, 2021. Richmond continued to supervise Wooton. Wooton negotiated the terms of his employment with Richmond during the continued health emergency; Revolution Foods' California office remained under restriction due to the pandemic and the discovery of additional coronavirus variants. Wooton worked remotely from his residence like

most Revolution Foods' employees.  Revolution Foods reserved the sole discretion to relocate Wooton's primary office.  Wooton's annual salary and eligibility for an annual bonus remained the same.  Wooton also received a one-time grant of 439,777 stock options.  Wooton was eligible for additional stock option grants each subsequent year of employment.

18.    Wooton accrued four work weeks (20 days) of vacation annually, and it was considered earned and accrued pro-rata on a biweekly basis beginning on the first day of employment, subject to a cap.  Wooton was also entitled to sick leave in accordance with Company policy and applicable law; he accrued 40 hours of paid sick time per year.

19.    Wooton worked remotely in Park City, Utah, during the pandemic, but he also worked at Revolution Foods' headquarters in Oakland, California, and Revolution Foods retained sole discretion to require him to perform duties in California.  All wrongful conduct described herein occurred in California.

20.    Wooton regularly received positive feedback, and no one raised any concerns about his performance informally or formally through any means.  Wooton accomplished several key strategic objectives while serving as Revolution Foods CFO, including, but not limited to, completing $10,000,000 in Series K funding, negotiating multiple restructurings of the Company's term loan revolving debt facility, implementing multiple cost-saving and profitability improvement initiatives, leading Revolution Foods to its first full year of profitability, completing $4,000,000 in convertible note funding, and completing $60,000,000 in Series L funding.

21.    In August 2021, Richmond expressed her gratitude to Wooton and a member of Wooton's team for obtaining the Series L funding.

22.    On November 24, 2021, Wooton and Richmond had a telephonic conversation during which Richmond praised Wooton's performance.  Richmond described Wooton as an "important, powerful leader."  She stated that Wooton "played a big role" in advancing the Company to an "exciting chapter"; she urged Wooton to look forward and reminded him he would "play an important part" of Revolution Foods' future.  She expressed gratitude for Wooton; she was "very grateful" for what Wooton brought to the table and reminded him "how much [his] team care[d] about him" and what he did "to build the company."

23.     On December 1, 2021, Engels became Revolution Foods' CEO, and Richmond became Chair of Revolution Foods' Board of Directors.

24.     On December 16, 2021, Wooton's baby girl was born, and he commenced paternity leave.

25.     On December 27, 2021, while on leave, Engels asks Wooton by text to contact him to discuss "some housekeeping items."

26.     On December 28, 2021, a little over a month after Richmond praised Wooton's performance as CFO, Engels informed Wooton that Revolution Foods decided to terminate him. Revolution Foods claims it terminated Wooton based on his performance.  The only change between the call with Richmond and Wooton's termination was his paternity leave.  On information and belief, Engels was in California when he informed Wooton that Revolution Foods was terminating his employment.

27.     On December 29, 2021, Wooton received his final wage statement by direct deposit. Although the wage statement indicated that Wooton had a balance of 98.4 hours of accrued vacation, Revolution Foods failed to pay Wooton his accrued vacation wages as required by Labor Code § 227.3.

## Wooton's Paternity/Baby Bonding Leave

28.     In August 2021, Wooton informed Richmond and Revolution Foods' Human Resources department that his wife was expecting a baby in December 2021, and he spoke with Richmond about taking paternity leave to help care for and bond with his newborn.

29.     Wooton desired to take and was eligible for family leave under the Family and Medical Leave Act ("FMLA") and the California Family Rights Act ("CFRA").  Wooton initially planned to commence his job-protected leave on December 16, 2021, and he would remain on leave until January 31, 2022.  However, when Wooton raised his leave with Engels, Engels made it clear that he was expected to use his accrued paid time off before starting FMLA leave in January 2022.  Engels discouraged Wooton from taking job-protected leave, and soon after Revolution Foods deprived Wooton of exercising his right to protected leave by terminating his employment.  Engels treated Wooton's paternity leave as a favor—a discretionary benefit Revolution Foods graciously "enabl[ed]" because of the "special event."

30.     Revolution Foods provided Wooton paperwork regarding his paternity leave on December 1, 2021.  On December 16, 2021, the day Wooton's wife gave birth, Wooton commenced paternity leave.  Revolution Foods terminated his employment less than two weeks later.

### Wooton's Investment In Revolution Foods, And Defendants' Fraud

31.     On February 5, 2021, Richmond asked Wooton to invest in Revolution Foods in the amount of $500,000 to "get there on the inside round" in order for Revolution Foods to raise adequate bridge funding to carry it through a planned strategic sale that subsequently fell through.

32.     Wooton was assured by the Board of Directors, particularly Richmond and Jed Smith, that his role as CFO did not present a conflict of interest, and he would be treated like all other investors.  Wooton also understood the investment would be short-term because it was intended as bridge funding.  Based on the Board's representations, Wooton agreed to invest $450,000 in Revolution Foods.  Richmond as CEO and a director invested $250,000 in Revolution Foods.  Jed Smith was also a member of the Board; through Catamount Ventures he invested $1,400,000 in Revolution Foods.  Revolution Foods' outside legal counsel vetted Richmond's, Wooton's, and Smith's investment in the Company and concluded it presented no conflict.  The Board concluded it was in the "best interest" of the Company and its stockholders to approve the terms for the "Note Financing" with Richmond's, Wooton's, and Smith's investment.

33.     On March 8, 2021, Revolution Foods completed a convertible note funding of $4,000,000.  On the same date, Wooton executed a Subordinated Convertible Promissory Note and Subordinated Convertible Note Purchase Agreement (collectively, "**Convertible Note**") with Revolution Foods, Inc. related to his investment.  Under the Convertible Note, Wooton gave Revolution Foods $450,000, and Revolution Foods was required to pay interest on the outstanding principal amount at twelve percent (12.0%) per annum ("PIK Interest").  Interest payable under the Convertible Note automatically accrued annually and was capitalized to the principal amount of such note on each calendar anniversary thereof.  Wooton and other investors are referred to the Convertible Note and other pertinent documents as a "Holder" or "Investor."

34.     Under Section 1.3 of the Convertible Note, if before the occurrence of specified events that do not apply here, such as the repayment in full of the Outstanding Indebtedness (i.e., the

outstanding principal amount and unpaid accrued PIK Interest), Revolution Foods either 1) refinanced the Senior Indebtedness, or 2) the Senior Indebtedness was replaced with new indebtedness or replacement indebtedness ("Refinancing Indebtedness"), such that in each case the indebtedness owed to Senior Lenders on the date of the Convertible note was repaid in full in cash, Revolution Foods was required to provide notice to each Investor, including Wooton, of the Refinancing Indebtedness and "specify if the Refinancing Indebtedness permit[ed] a cash prepayment of the Notes as provided in Section 1.3(b)(i) below." If the Senior Indebtedness Refinancing Notice ("**Notice**") specified that the Refinancing Indebtedness permitted a cash prepayment of each Investor's Note, then the Investor had discretion to elect in writing no later than ninety (90) days following the receipt of the Notice to have the Note prepaid as follows:

> each electing such Investor shall receive from the Company no later than ninety (90) days following the Company's receipt of its Investor Prepayment Election, a payment (for such Investor, its "Prepayment Amount") equal to one hundred sixty percent (160%) of the then Outstanding Indebtedness under such Investor's Note (including all accrued and unpaid PIK Interest), which Prepayment Amount (upon receipt) shall constitute a complete and final repayment in full and retirement of such Investor's Note, and such Investor's Note shall thereupon automatically be cancelled without further action by any person immediately upon such Investor's receipt of such payment.

35. On August 9, 2021, Revolution Foods through Richmond provided the written Notice to the Investors (hereafter, "**August 9 Notice**"), including Wooton, of a Refinancing Indebtedness pursuant to Section 1.3(b)(i). In sending the August 9 Notice by e-mail, which copied Richmond, Revolution Foods' VP of Finance & Strategy stated, "Note that you are not required to exercise the Conversion Option . . . ." The Notice informed Wooton that the Company offered "each Holder of a Note the opportunity to elect to accept full repayment of such Holder's Note in an amount equal to 160% of the Outstanding Indebtedness (the "**Repayment**")." For Wooton, the option to accept full Repayment was equivalent to $720,000 for a $450,000 initial investment. The Notice also presented a "**Conversion Option**"—i.e., "to convert the Outstanding Indebtedness into shares of Series L Preferred Stock at a per price share equal to 80% of the price per share paid by investors for the Series L Preferred Stock in the Series L Financing." The Notice attached an "Election and Waiver of Notice" with three choices: (1) ELECT TO CONVERT, (2) ELECT REPAYMENT, or (3) WAIVE the other

two options, meaning the Note would not be repaid until the earlier of a Liquidation Event or maturity.

36.    In mid-August 2021, Revolution Foods' Board of Directors, Richmond, and its outside legal counsel discussed options for repayment and conversion to complete the Series L funding, and Wooton learned that one current investor was reticent to allow cash payments while the Series L lead investor was unwilling to allow the notes to remain outstanding.

37.    On August 13, 2021, without Wooton's consent or even considering Wooton's rights under the Convertible Note and the August 9 Notice, Gunther "negotiated a deal" with the two investors that all investors *except* Wooton and Richmond could elect repayment under the Notice.

38.    On August 13, 2021, at 2:40 p.m., after Wooton learned of Gunther's side deal, Wooton sent an e-mail to Richmond and Revolution Foods' outside counsel conveying that it was unacceptable not only because he was being treated differently but also because he was being disadvantaged. Wooton's intention to elect repayment was clear: "I won't agree to be subordinated to the Series L."

39.    On August 14, 2021, Wooton, Gunther, and Richmond exchanged additional e-mails in which Wooton reiterated that, as promised, he expected to be treated on equal footing with all other noteholders, as and he was "not willing to be forced into accepting a single option that disadvantage[d] [him] over others when [he] stepped up to support the company in a time of need."  In attempting to reach a compromise, Wooton stated he was willing to consider converting into Series K at 80% of the purchase price.  Later that evening, Gunther sent a text to Wooton stating, "I think we found a solution that should work for all," and Gunther suggested they speak by telephone on August 15, 2020.  On information and belief, Gunther's reference to "we" included Richmond and Revolution Foods' other board members.

40.    On August 15, 2020, Gunther and Wooton spoke by telephone.  On behalf of the Board of Directors, Gunther promised Wooton that if he consented to the Conversion Option presented in the August 9 Notice, Revolution Foods' Board would "find a way to make him whole" for the "full amount" of the cash conversion he would forego if he elected the Conversion Option, in addition to the transaction bonus he had already been promised.  Wooton would have received an additional $157,500 for his investment if he elected repayment, as he intended.  Gunther promised that Wooton would receive the additional money as a "make-whole" "bonus" when Revolution Foods paid its Fiscal

Year 2021 bonuses.  The promised amount was separate and in addition to compensation Wooton would receive for participating in Revolution Foods' bonus plan and for the crucial role he played in achieving the Series L Financing.  As CEO and a member of the Board, Richmond approved the purported "solution."  Richmond was subsequently elevated to a generously paid seat on Revolution Foods' Board of Directors as the Chair.

41.     During the call, Gunther pressured Wooton to convert and conveyed that the Company's future, and, therefore, Wooton's job, was at risk if he did not acquiesce.  Wooton relied on Gunther's promise of continued employment and representation that Revolution Foods would pay Wooton $157,500 as additional bonus compensation.

42.     Consequently, on August 15, 2021, as a result of and solely because of Gunther's representations on behalf of Revolution Foods' Board of Directors, Wooton was fraudulently induced to check "ELECT TO CONVERT" instead of "ELECT REPAYMENT" on the Election and Waiver Notice.  Thereafter, on August 20, 2022, for the same reason, Wooton entered into a "Series L Preferred Stock Purchase Agreement" ("**Series L Agreement**") with Revolution Foods, Inc.  Smith, like all other investors except Wooton and Richmond, elected repayment.

43.     On August 20, 2021, Revolution Foods obtained $60,000,000 in Series L funding under Wooton's leadership.  Simultaneously, Revolution Foods paid off its term loan and revolving credit facility, effectively restructuring its existing debt.

44.     On November 19, 2021, Wooton texted Gunther to inquire "how the board [was] thinking about performance bonuses."  On November 23, 2021, at 2:30 p.m., Gunther and Wooton discussed the Board's proposed bonuses.  The proposal included a performance bonus pursuant to the May 5, 2021, employment agreement and a transaction bonus for leading the Company through the Series L funding; it did ***not*** include the promised "make-whole" bonus of $157,500 for inducing Wooton to elect the Conversion Option.  Revolution Foods also paid another member of Wooton's team both her year-end bonus and the transaction bonus.  As CEO and a member of the Board, Richmond was involved in determining and approving the bonuses for Fiscal Year 2021.

45.     On November 23, 2021, at 3:00 p.m., Wooton informed Richmond by text that he was disappointed regarding the proposed bonuses.  Richmond responded that Engels was "in place" as the

Boyer Wenter LLP
1585 N. 4th St, Suite N
San Jose, CA 95112

COMPLAINT; JURY TRIAL DEMANDED

new CEO and being "consulted."

46.     On November 24, 2021, at 12:15 p.m., Richmond and Wooton had a telephone call during which Wooton expressed concerns about the bonus, being forced to covert notwithstanding his contractual rights, and the false promise to make him "whole."  During the call, Richmond called it "a horrible . . . shitty situation" and acknowledged that Wooton was "forced against a wall." In raising concerns, Richmond made further promises regarding Wooton's continued employment with Revolution Foods; Richmond told Wooton to look forward to the "next chapter"—"the next 6, 12, 18 months" for Wooton to see the "true payoff" from the investment and reminded him that he would "play an important part of [Revolution Foods'] future," and while Richmond was not in a position to fix the situation, she assured him he was an "important, powerful leader of the company."  Richmond expressed it would be a "huge loss" for Revolution Foods if he parted ways over the investment. Richmond also emphasized that management and the Board knew that Wooton was not "opportunistically capitalizing" on Revolution Foods or acting in bad faith.

47.     On December 17, 2021, Revolution Foods paid Wooton his annual performance bonus and a transaction bonus, but not the promised additional $157,500 for inducing Wooton to elect to convert.

48.     On December 28, 2021, Engels informed Wooton that Revolution Foods was terminating his employment effective that day.

## EXHAUSTION OF REMEDIES

49.     On September 13, 2022, Wooton timely filed a complaint against Defendants with the Department of Fair Employment and Housing and received a Notice of Case Closure and Right to Sue. Wooton has therefore exhausted his administrative remedies under the Fair Employment and Housing Act and the California Family Rights Act.

## FIRST CAUSE OF ACTION

## VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT

(29 U.S.C. § 2615(a)(1); 29 C.F.R. § 825.220, *et seq.*)

(Against Defendants Revolution Foods, PBC, Revolution Foods, Inc., Engels, and Does 1-20)

50.     Plaintiff incorporates by reference each and every allegation in this Complaint as set

Boyer Wenter LLP
1585 N. 4th St, Suite N
San Jose, CA 95112

forth fully herein.

51.     At all relevant times mentioned in this Complaint, the FMLA was in full force and in effect and was binding on Defendants Revolution Foods and Engels.

52.     The FMLA provides that eligible employees are entitled to take up to 12 weeks of leave in any 12-month period because of the birth of a son or daughter of the employee in order to care for such son or daughter and to "be with the healthy newborn child" for baby bonding.  29 U.S.C. § 2612(a)(1)(A); 29 C.F.R. § 825.120.

53.     Plaintiff worked well in excess of 1,250 hours in the 12 months immediately before January 1, 2022, the date Plaintiff's leave was supposed to commence, and Plaintiff is therefore entitled to the provisions and protections of, as well as the remedies provided by, the FMLA.

54.     Plaintiff sought 6 weeks of leave to care for and bond with his daughter commencing on December 16, 2022, the day she was born.  Defendants were aware of Plaintiff's wife's impending birth, and Plaintiff provided timely and reasonable notice to Defendants regarding his right to take leave under the FMLA.

55.     Employers are required to notify employees of their rights and obligations under the FMLA.  29 C.F.R. § 825.300.  Defendants failed to give Plaintiff proper notice concerning his rights and obligations.  In December 2021, Plaintiff met with Engels to discuss his need for leave.  Engels made it clear to Plaintiff that he was expected to use paid time off before commencing his FMLA leave in January 2022 and treated Plaintiff's entitlement to FMLA leave as discretionary, not mandatory.  Engels acknowledged the impending birth of Plaintiff's daughter and described his paternity leave as something Revolution Foods "enabled" him to take.

56.     Defendants unlawfully interfered with Plaintiff's exercise of his right to leave under the FMLA by failing to provide Plaintiff prompt, proper notice of his rights and responsibilities, discouraging Plaintiff from taking FMLA leave, requiring Plaintiff to delay taking his FMLA leave, and denying him FMLA leave by terminating him on or around December 28, 2022.

57.     Defendants also retaliated against Plaintiff for invoking his right to leave under the FMLA.  Defendants knew Plaintiff intended to take leave under the FMLA and would have commenced it already had Engels not discouraged him from commencing leave sooner.  Defendants,

however, terminated Plaintiff within three days of Plaintiff's planned FMLA leave because he invoked his right to leave under the FMLA.

58.     As a direct and proximate result of Defendants' interference and/or retaliation, Plaintiff has been harmed because he suffered the loss of wages, benefits, and additional amounts of money he would have received had Defendants not unlawfully interfered with his rights and retaliated against him, and he has suffered emotional distress and harm to his reputation in an amount to be proven at trial.  Plaintiff claims general damages for such mental and physical distress and aggravation in a sum to be proven at trial.

59.     The above-described wrongful acts by Defendants, and each of them, were committed with fraud, malice, and/or oppression, and Plaintiff is thus entitled to recover punitive damages in an amount to be proven at trial.

60.     As a result of Defendants' willful violations of the FMLA, which were not made in good faith, Plaintiff is entitled to liquidated damages in an amount to be proven at trial.  As a proximate result of Defendants' wrongful acts, Plaintiff was forced to hire attorneys to prosecute his claims, and he has incurred and is expected to continue to incur attorneys' fees and costs in vindicating his rights. *See* 29 U.S.C. § 2617(a)(1)(A)(iii) & (a)(3).

## <u>SECOND CAUSE OF ACTION</u>

### <u>VIOLATION OF THE CALIFORNIA FAMILY RIGHTS ACT</u>

(Cal. Gov. Code. § 12945.2 *et seq.*)

(Against Defendants Revolution Foods, PBC, Revolution Foods, Inc., and Does 1-20)

61.     Plaintiff incorporates by reference each and every allegation in this Complaint as set forth fully herein.

62.     Defendants are subject to the CFRA and the California Fair Employment and Housing Act ("FEHA") as it employs more than fifty (50) employees, and Plaintiff was entitled to leave under the CFRA to take up to a total of 12 workweeks of leave "for the birth of a child of [Plaintiff]."  *See* Cal. Gov. Code. § 12945.2(a), (b)(4).

63.     Pursuant to CFRA, an employer is prohibited from discriminating or retaliating against an employee for having exercised or attempted to exercise CFRA rights.  *See* 2 CCR § 11094.

Government Code §§ 12940(h) and 12945.2(1) also prohibit retaliation against an employee that exercises its rights under both statutes.

64.    Defendants violated the CFRA by interfering with and effectively denying Plaintiff's attempt to exercise his right to leave and thereafter discriminated against and discharged Plaintiff for exercising his rights.

65.    Defendants' wrongful acts, including discrimination, retaliation, and the wrongful termination of Plaintiff's employment, are the legal and proximate cause of harm and injury to Plaintiff in an amount to be determined at trial, including but not limited to Plaintiff's loss of salary, bonuses, and other compensation and benefits Defendants owed him by virtue of his employment, and emotional distress.

66.    The above-described wrongful acts by Defendants, and each of them, were committed with fraud, malice, and/or oppression, and Plaintiff is thus entitled to recover punitive damages in an amount to be proven at trial.

67.    As a proximate result of Defendants' wrongful acts, Plaintiff was forced to hire attorneys to prosecute his claims, and he has incurred and is expected to continue to incur attorneys' fees and costs in vindicating his rights.  *See* Cal. Gov. Code § 12965(c)(6).

### <u>THIRD CAUSE OF ACTION</u>

### **FAILURE TO PREVENT DISCRIMINATION AND RETALIATION**

(Against Defendants Revolution Foods, PBC, Revolution Foods, Inc., and Does 1-20)

68.    Plaintiff incorporates by reference each and every allegation in this Complaint as set forth fully herein.

69.    It is unlawful under the FEHA for an employer to fail to take all reasonable steps necessary to prevent discrimination, harassment, and retaliation.  *See* Cal. Gov. Code § 12940(k), (h).

70.    Defendants failed to prevent discrimination and retaliation from occurring.  Wooton was an employee of Defendants, and Defendants had a duty to take all steps necessary to prevent and remedy discrimination and retaliation.  Defendants breached its duty when it failed to properly implement policies concerning protected leave, failed to properly notify Plaintiff of his rights under the CFRA and FEHA, and allowed its management to discriminate and retaliate against Plaintiff for

exercising his right to leave to care for and bond with his new baby.

71.    As a result of Defendants' conduct, Wooton has suffered harm and injury in an amount to be determined at trial, including but not limited to Plaintiff's loss of salary, bonuses, and other compensation and benefits Defendant Revolution Foods owed him by virtue of his employment, and emotional distress.

72.    The above-described wrongful acts by Defendants, and each of them, were committed with fraud, malice, and/or oppression, and Plaintiff is thus entitled to recover punitive damages in an amount to be proven at trial.

### FOURTH CAUSE OF ACTION

### WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

(Against Defendants Revolution Foods, PBC, Revolution Foods, Inc., and Does 1-20)

73.    Plaintiff incorporates by reference each and every allegation in this Complaint as set forth fully herein.

74.    As alleged herein, at all times during his employment with Defendants, Plaintiff performed his job duties in an exemplary manner and received praise for his performance.  Plaintiff was never admonished or coached regarding his performance.  In late November 2021, before terminating Plaintiff, Defendant Richmond described Plaintiff as an "important, powerful leader" and told him he would "play an important part of [Revolution Foods'] future."

75.    Plaintiff's invocation of his rights under the FMLA and CFRA and disclosure of information showing that Defendants engaged in securities fraud substantially motivated Defendants' decision to terminate Plaintiff.

76.    The prohibition against employment discrimination and retaliation based upon a party taking or invoking his right to family and medical leave is a substantial and fundamental public policy of the State of California, and Defendant's termination of Plaintiff's employment violated this public policy.  *See Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1137 (9th Cir. 2003).

77.    As a proximate result of Defendant's wrongful termination of Plaintiff's employment, Plaintiff has suffered and continues to sustain substantial losses in earnings and other employment benefits in an amount according to proof at trial.

78.     As a proximate result of Defendant's wrongful termination of his employment, Plaintiff has suffered humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in an amount according to proof at trial.

79.     In doing the acts alleged herein, Defendant acted with fraud, malice, and/or oppression, and Plaintiff is thus entitled to recover punitive damages in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION

**BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

(Against Defendants Revolution Foods, PBC, Revolution Foods, Inc., and Does 1-20)

80.     Plaintiff incorporates by reference each and every allegation in this Complaint as set forth fully herein.

81.     In every contract, there is an implied covenant of good faith and fair dealing.  This covenant obligated Revolution Foods to perform the terms and conditions of the Convertible Note and August 9 Notice fairly and in good faith and to refrain from doing any act that would deprive Plaintiff of the benefits of the contract.

82.     Plaintiff performed all the duties and conditions of the Convertible Note and was entitled to be treated equally as an Investor/Holder and, therefore, was entitled to cash out pursuant to the August 9 Notice.  Revolution Foods knew that Plaintiff had fulfilled his duties under the contract and intended to exercise the option to cash out.  By pressuring and ultimately inducing Plaintiff to elect to convert instead of electing repayment through improper and fraudulent means—i.e., by questioning his future with Revolution Foods and falsely promising to pay him the shortfall—Revolution Foods breached the covenant of good faith and fair dealing.  Revolution Foods knowingly, willfully, and intentionally forced Plaintiff to convert, failed to honor its promise, and deprived Plaintiff of the benefit of the bargain.

83.     As a direct and proximate result of Revolution Foods' breach of the covenant of good faith and fair dealing, Plaintiff has suffered and will continue to suffer damage in an amount to be proven at trial.

///

///

1

**SIXTH CAUSE OF ACTION**

2

**FRAUDULENT INDUCEMENT**

3

(Against Defendants Revolution Foods, PBC, Rev. Foods, Inc., Richmond, Gunther, and Does 1-20)

4

84.     Plaintiff incorporates by reference each and every allegation in this Complaint as set

5

forth fully herein.

6

85.     Pursuant to Section 1.3 of the Convertible Note, on August 9, 2015, Revolution Foods

7

informed Wooton that he had the opportunity to elect to accept full repayment of the Convertible Note

8

in an amount equal to 160% of the Outstanding Indebtedness.

9

86.     On or around August 15, 2021, on behalf of Revolution Foods, Gunther and Richmond

10

made material and false representations to Plaintiff.  On behalf of Revolution Foods and the Board,

11

Gunther informed Plaintiff he could ***not*** elect to receive a cash payment under the Convertible Note

12

and August 9 Notice, she expressed his job was on the line, and, to induce Plaintiff to waive his right

13

to repayment under the Convertible Note and August 9 Notice, Gunther and Richmond promised

14

continued employment and a bonus commensurate with the amount Wooton would have received if

15

he elected the cash payment.

16

87.     Wooton is informed and believes and thereon alleges that when Defendants made the

17

promises, they had no intention to perform and instead knowingly made false promises intending to

18

induce Wooton to agree to "ELECT TO CONVERT" on the August 9 Notice and thereafter enter into

19

the Series L Agreement, thereby foregoing a cash repayment equal to 160% of the Outstanding

20

Indebtedness.  Revolution Foods, Gunther, and Richmond procured Wooton's election to convert and

21

his signature on the Series L Agreement through fraud.

22

88.     Wooton reasonably and detrimentally relied on Defendants' promises and had no

23

reason to doubt the veracity because Richmond was also an investor and claimed she also preferred

24

repayment but instead converted; Wooton believed from feedback he received that he was a valued

25

employee and the Board was grateful for his investment; Wooton had a positive work relationship

26

with Richmond, and Richmond assured him the Board would honor its promise.  Richmond was

27

subsequently elevated to Chair of the Board for which she was and is generously compensated.

28

89.     Plaintiff would not have checked the "ELECT TO CONVERT" box on the August 9,

2021 Notice or entered into the Series L Agreement had Revolution Foods, through Gunther and Richmond, not made knowingly false misrepresentations.  Revolution Foods forced Plaintiff to convert, thereby depriving him of a cash repayment at 160%.  Revolution Foods never paid Plaintiff the promised $157,500, and Revolution Foods terminated his employment despite Richmond's assurance he would see the payoff of his investment as he continued to lead the Company through the "next chapter."

90.     As a direct and proximate result of Defendants' fraud, Plaintiff has suffered damages in an amount to be proven at trial.

91.     Defendants' false promises were intentional and carried out with malice in conscious disregard of Plaintiff's rights.  Revolution Foods' management and Board members ratified Defendants' false promises.  Accordingly, Plaintiff is entitled to recover punitive damages in an amount sufficient to punish Defendants for their conduct and to deter such conduct in the future.

## SEVENTH CAUSE OF ACTION

## NEGLIGENT MISREPRESENTATION

(Against Defs. Revolution Foods, PBC, Revolution Foods, Inc., Gunther, Richmond, and Does 1-20)

92.     Plaintiff incorporates by reference each and every allegation in this Complaint as set forth fully herein.

93.     Defendants made various representations to Plaintiff as alleged herein, including, without limitation, that Plaintiff would be treated equally as all other investors and the investment was short-term as an intended bridge loan; that Plaintiff would remain employed and receive an additional bonus of $157,500 if he elected conversion instead of repayment, as he intended based on Section 1.3 of the Convertible Note and the corresponding August 9 Notice; and Plaintiff was a valued, important part of Revolution Foods and would see the "true payoff" of his investment as part of the leadership team.  Each of these representations was false.

94.     Defendants made the representations without reasonable grounds for believing them to be true and used Plaintiff as a means to an end.  Plaintiff relied on Defendants' representations, causing him to enter into the Convertible Note, elect conversion under the August 9 Notice, and enter into the Series L Agreement.

95.     Plaintiff has been harmed as alleged herein and suffered damages in an amount to be proven at trial.

96.     Plaintiff's reliance on Defendants' representations was a substantial factor in causing his harm.  Plaintiff would never have invested his money in Revolution Foods or agreed to convert the Outstanding Indebtedness into shares of Series L Preferred Stock had he known that Revolution Foods would 1) not honor the terms of the Convertible Note and August 9 Notice and treat him equal to other investors, 2) fail to pay him the additional "make-whole bonus," and 3) fire him despite assurances of continued employment.

97.     As a direct and consequential result of Revolution Foods' actions, Plaintiff has suffered emotional distress.

## EIGHTH CAUSE OF ACTION

### CONVERSION

(Against Defendants Revolution Foods, PBC, Revolution Foods, Inc. and Does 1-20)

98.     Plaintiff incorporates by reference each and every allegation in this Complaint as set forth fully herein.

99.     Plaintiff owned and had a right to sole possession of the money he invested in Revolution Foods and the PIK interest accrued on his investment under the Convertible Note.  Plaintiff thereafter had a right to elect repayment of the Convertible Note and receive a cash repayment equal to 160% of the Outstanding Indebtedness of the Convertible Note under the Convertible Note and August 9 Notice.

100.     Revolution Foods, through its Board of Directors, intentionally and substantially interfered with Plaintiff's property – the Outstanding Indebtedness owed to Plaintiff under the Convertible Note and repayment at 160% – by fraudulently inducing him to convert the Convertible Note and receive shares of Series L Preferred Stock.

101.     Wooton did not voluntarily consent to the taking of the Outstanding Indebtedness because it was procured by fraud, and he has therefore been harmed.

102.     As a direct and proximate result of Revolution Foods' conversion, Plaintiff has suffered injury, damages, and loss in an amount to be determined at trial.

103.    Revolution Foods' conduct was fraudulent, oppressive, and malicious, and Plaintiff is entitled to a further award of punitive damages in an amount to be determined at trial.

## NINTH CAUSE OF ACTION

### FAILURE TO TIMELY PAY ALL WAGES AT TERMINATION

(Labor Code §§ 201, 203)

(Against Defendants Revolution Foods, PBC, Revolution Foods, Inc., and Does 1-20)

104.    Plaintiff incorporates by reference each and every allegation in this Complaint as set forth fully herein.

105.    California Labor Code § 201 requires the immediate payment of all wages owed at termination: "[i]f an employer discharges an employee, the wages earned and unpaid at the time of discharges are due and payable immediately."

106.    Defendant Revolution Foods terminated Plaintiff on December 28, 2021, effective that same day.

107.    On December 29, 2021, Revolution Foods directly deposited Plaintiff's final wages into his bank account.

108.    Plaintiff's final paycheck did not include all wages owed, including Plaintiff's vested vacation time (98.4 hours).

109.    California Labor Code § 203 provides that if an employer willfully fails to pay wages owed under Labor Code § 201, "the wages shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced," but will not continue for more than 30 days.

110.    Under Labor Code § 218.5, in any action brought for the nonpayment of wages, fringe benefits, or health and welfare pension contributions, a prevailing plaintiff shall be entitled to an award of attorney's fees and costs if requested upon the initiation of the action.

111.    Plaintiff has been injured as set forth above and requests relief under Labor Code § 203, and attorneys' fees under Labor Code § 218.5.

///

///

**TENTH CAUSE OF ACTION**

**FAILURE TO PAY ALL VESTED VACATION TIME**

(California Labor Code § 227.3)

(Against Defendants Revolution Foods, PBC, Revolution Foods, Inc., and Doe Defendants)

112.     Plaintiff incorporates by reference each and every allegation in this Complaint as set forth fully herein.

113.     Labor Code § 227.3 entitles employees to the payment as wages of all vested vacation pay upon termination if the contract for employment or employer policy provides for paid vacation.

114.     Revolution Foods provides paid vacation time to eligible employees.  Plaintiff accrued (4) work weeks (20 days) of vacation on an annual basis, which was considered earned and accrued pro-rata on a biweekly basis beginning on the first day of employment.

115.     As of December 28, 2021, Wooton had 98.4 hours of vested vacation time.

116.     Wooton's final wage statement did not include payment for his vested vacation time.

117.     Under Labor Code § 218.5, in any action brought for the nonpayment of wages, fringe benefits, or health and welfare pension contributions, a prevailing plaintiff shall be entitled to an award of attorney's fees and costs if requested upon the initiation of the action.

118.     Wooton has been harmed by Defendants' failure to pay Wooton his vested vacation time at the time of discharge.  Wooton, therefore, requests relief and attorneys' fees.

**ELEVENTH CAUSE OF ACTION**

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

(Against Defendants Revolution Foods, PBC, Revolution Foods, Inc., Engels, and Does 1-20)

119.     Plaintiff incorporates by reference each and every allegation in this Complaint as set forth fully herein.

120.     When Defendants engaged in the acts and omissions herein, they knew that such acts and omissions would cause Plaintiff to suffer emotional distress.  Defendants' actions in terminating Plaintiff because he exercised his rights under the FMLA and CFRA, resulting in Plaintiff being unemployed on the heels of his wife giving birth to their child and while he was on paternity leave caring for and bonding with his newborn baby girl, coupled with Revolution Foods' fraud, amounted

to extreme and outrageous conduct and was intended to inflict emotional distress on Plaintiff.

121. Defendants knew or should have known that discouraging Plaintiff from taking leave, depriving him of protected leave, falsely promising him continued employment, and terminating him while on company-approved paternity leave at a time he needed to care for his newborn and wife was severe and outrageous conduct that caused Plaintiff severe emotional distress. Defendants also should have known that fraudulently inducing Plaintiff to forgo his right to repayment under the August 9 Notice and the subsequent failure to pay him the promised additional bonus when he and his wife expected a new baby was severe and outrageous conduct that caused Plaintiff severe and emotional distress.

122. Defendants acted with reckless disregard for Plaintiff's rights and with deliberate indifference to the fact that Plaintiff would suffer emotional distress.

123. Defendants' intentional conduct of fraudulently procuring Plaintiff's election to convert, interfering with Plaintiff's leave, and retaliating against and wrongfully terminating Plaintiff was each a substantial factor in causing Plaintiff severe emotional distress. Plaintiff's general and special damages proximately resulting from Defendants' wrongful actions exceed the jurisdictional minimum in an amount to be proven at trial.

124. Plaintiff is informed and believes and thereon alleges that the above-described outrageous conduct was performed with conscious disregard for his rights, well-being, and safety. As a result, Plaintiff is entitled to punitive damages from Defendants in a sum according to proof at trial.

## TWELFTH CAUSE OF ACTION

## VIOLATION OF CORPORATIONS CODE § 25401

(Cal. Corp. Code §§ 25401, 25501)

(Against Defendants Revolution Foods, Inc., Revolution Foods, PBC, and Does 1-20)

125. Plaintiff incorporates by reference each and every allegation of the complaint as if fully set forth herein.

126. Corporations Code § 25401 prohibits any person from offering or selling a security "by means of any written or oral communication that includes an untrue statement of a material fact or omits to state a material fact."

127.   A "security" includes "any note; stock; . . . [or] investment contract" under Corporations Code § 25019.

128.   Defendants offered to sell and did sell Plaintiff securities within California by means of communications that included untrue statements of material facts and/or by omitting to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading.

129.   Revolution Foods through Richmond and the Board of Directors asked Plaintiff to invest in Revolution Foods and represented to Plaintiff that Plaintiff would be treated as all other investors.  Revolution Foods needed Plaintiff's investment for adequate bridge funding to accomplish a planned strategic sale.  Plaintiff agreed to invest $450,000 in Revolution Foods because he understood that Revolution Foods would treat him as an "Investor" and that Section 1.3(b) of the Convertible Note applied equally to Plaintiff, as reflected in the Convertible Note and August 9 Notice, both of which were directed to Plaintiff as an "Investor" or "Holder."  No officer or director of Revolution Foods stated that Plaintiff would be treated differently as an officer of the Company; to the contrary, the Board of Directors assured him he would be treated as an Investor and concluded that his role as an officer of the Company did not present a conflict of interest.  Wooton would never have invested if doing so could have been perceived as a conflict, and Revolution Foods concluded with the advice of outside counsel that Further, neither the Convertible Note nor the August 9 Notice provided any exception for an officer of the Company or excluded Plaintiff from any benefit therein. The untrue statements about treating Plaintiff as an Investor who would be equally entitled to all benefits under the Convertible Note were material to Plaintiff's decision to purchase the Convertible Note.

130.   Further, when Plaintiff stated his intent to elect repayment pursuant to Section 1.3 of the Convertible Note and the August 9 Notice, Revolution Foods through Gunther and Richmond made another materially false statement—namely, that Plaintiff had no choice but to convert and Revolution Foods would pay him the difference between the Repayment Option and Conversion Option (i.e., $157,500) as additional bonus compensation if he elected to convert.  The untrue statement that Revolution Foods would pay him the additional bonus compensation was material in

Plaintiff's acquiescence to Defendants' demands and resulted in Revolution Foods selling Series L Preferred Stock to Plaintiff.

131.    Revolution Foods effectuated the sale of the "security"—i.e., the convertible promissory note and the sale and issuance of Series L Preferred Stock—in Oakland, California, at Revolution Foods' headquarters.

132.    By virtue of these untrue statements and omissions of material fact, Defendants are strictly liable under Corporations Code § 25401.

133.    Plaintiff is entitled to damages under Corporations Code § 25501 because he no longer owns the Convertible Note and the corresponding option to elect repayment as a result of Defendants' fraud.  Plaintiff is also entitled to rescission under Corporations Code § 25501 because he still owns the Series L Preferred Stock.

134.    Plaintiff is entitled to attorneys' fees under Corporations Code § 25501.5.

## THIRTEENTH CAUSE OF ACTION

### RETALIATION FOR REPORTING SECURITIES FRAUD

(Against Defendants Revolution Foods, PBC, Revolution Foods, Inc., and Does 1-20)

(Labor Code § 1102.5)

135.    Plaintiff hereby incorporates paragraphs 1–27, 31–48, 80–97, and 119–128 as though fully set forth herein.

136.    California Labor Code § 1102.5 makes it unlawful for an employer to retaliate against an employee for disclosing conduct he reasonably believes violates the law.

137.    At all relevant times, Revolution Foods was Plaintiff's employer, and Plaintiff was an employee under the Labor Code.

138.    Plaintiff disclosed information he reasonably believed violated the law by raising concerns to Gunther and Richmond that he was being treated differently from other investors, that he had a right to convert and intended to under the Convertible Note and August 9 Notice, and that he felt pressured and forced to convert when he intended to elect repayment.  Plaintiff reasonably believed that Revolution Foods committed fraud by asking him to invest while stating he would be treated as all other investors and thereafter unlawfully induced him to purchase Series L Preferred Stock by

making untrue statements.  Plaintiff shared his concerns with Richmond during their telephone call on November 24, 2021.  At the time, Richmond was Plaintiff's supervisor and CEO of Revolution Foods.  On information and belief, Richmond communicated Plaintiff's disclosure to Engels, Richmond's predecessor.

139.    On December 28, 2021, Revolution Foods terminated Plaintiff.

140.    Plaintiff's disclosure of Defendants' fraud was a contributing factor in Revolution Foods' decision to discharge Plaintiff.

141.    Defendants' wrongful conduct was a substantial factor in causing Plaintiff harm, including lost compensation, benefits, and equity, damage to Plaintiff's reputation, loss of future income, and severe emotional distress, mental anguish, and suffering.

142.    Defendants' acted with fraud, oppression, malice, and despicably with the intent to cause Plaintiff injury and with a conscious disregard of Plaintiff's rights.  Defendants subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights, thereby entitling him to an award of exemplary and punitive damages.  Defendants' most senior executives and board members authorized and ratified the decision to terminate Plaintiff.

143.    Plaintiff has incurred and will continue to incur attorneys' fees, and he is entitled to recover attorneys' fees and costs under Labor Code § 1102.5.

## FOURTEENTH CAUSE OF ACTION

### UNLAWFUL, UNFAIR, AND FRAUDULENT BUSINESS PRACTICES

(Business & Professions Code § 17200 *et. seq.*)

(Against Defendants Revolution Foods, PBC, Revolution Foods, Inc., and Doe Defendants)

144.    Plaintiff incorporates by reference each and every allegation in this Complaint as if fully set forth herein.

145.    Business & Professions Code § 17200 states, "As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice . . . ."

146.    Defendants' conduct, including but not limited to, Defendants' use of fraud to procure Plaintiff to enter into a promissory note and to convert the Convertible Note into Series L Preferred Stock; its intentional acts designed to deprive Plaintiff of the benefits of the Convertible Note and his

investment; discriminating and retaliating against Plaintiff for exercising rights guaranteed by California law; failing to timely pay Plaintiff wages at termination and unlawfully withholding Plaintiff's wages.

147.   Defendants' unlawful, unfair, and fraudulent business practices occurred in California and violated the FEHA, the CFRA, the California Labor Code, and California Corporations Code § 25401.

148.   Plaintiff has suffered harm from Defendants' unfair, unlawful, and fraudulent business practices, and he seeks restitution to redress the injuries caused from Defendants' violations.

## **PRAYER**

Plaintiff prays for judgment against Defendant as follows:

a.   Award back pay, front pay, and other monetary relief according to proof for violation of the FMLA, CFRA, FEHA, and Labor Code § 1102.5;

b.   Award liquidated damages in an amount equal to the entire award of lost wages, benefits, and interest for Defendants' violation of the FMLA;

c.   Award compensatory and punitive damages for Defendants' fraud, discrimination, retaliation, and wrongful termination;

d.   For damages and/or rescission under Corporations Code §§ 25501 and 25501.5;

e.   Award restitution to Plaintiff for the monies that Defendants unlawfully obtained in violation of the UCL;

f.   Award prejudgment interest and post-judgment interest on any monetary awards at the applicable legal rate;

///
///
///
///
///
///
///

g.      Award costs of the suit and Plaintiff's reasonable attorneys' fees pursuant to 29 U.S.C. § 2617, Government Code § 12965, Labor Code §§ 218.5, 1102.5, and Corporations Code § 25501.5; and

h.      Award expert witness fees as allowed under 29 U.S.C. § 2617(3) and Government Code § 12965(c)(6).


Dated:  September 24, 2022                    BOYER WENTER LLP


By:  /s/ Billie D. Wenter
Todd K. Boyer
Billie D. Wenter
Attorneys for Plaintiff


## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all claims so triable.


Dated:  September 24, 2022                    BOYER WENTER LLP


By:  /s/ Billie D. Wenter
Todd K. Boyer
Billie D. Wenter
Attorneys for Plaintiff